

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH F. GUTHRIE, et. al.,

    Plaintiffs,

v.                    Civil Action No. 3:07cv479

ANTHONY E. FLANAGAN,

    Defendant.

## MEMORANDUM OPINION

Plaintiffs, Joseph and Kelly Guthrie, filed this action against their former attorney, Anthony Flanagan, alleging a claim for legal malpractice.  Before trial, the parties stipulated that Flanagan's actions were negligent and then proceeded to trial on the issues of causation and damages only.  At a bench trial, the Court heard testimony from the two plaintiffs, Joseph and Kelly Guthrie, and the defendant, Anthony Flanagan.  The Court also received into evidence Plaintiffs' Exhibits 1-23 and Defendants' Exhibits 1-4.[1]  There were no objections to those exhibits.  A number of exhibits were excluded at the final pretrial conference, based on objections by the Plaintiffs.  At the close of the Plaintiffs' evidence, the Defendant made a motion for a directed verdict, which, after

---

[1] These were numbered 39, 40, 41, and 44 in the Final Pretrial Order.

1

consideration of the evidence, was denied.   (Tr. of Bench Trial ("Transcript") 121, Feb. 6, 2008.)

### FINDINGS OF FACT

The Court has reviewed the evidence introduced and the arguments of the parties.  The parties have submitted Proposed Findings of Fact, Supplemental Proposed Findings of Fact, and supplemental briefing in accord with the Court's order of May 28, 2008.  Pursuant to Fed. R. Civ. P. 52(a), the Court makes the following findings of fact:

1. The underlying case in which the malpractice occurred was a civil action brought by United Leasing Corporation ("ULC") and Shield Family Partnership against Joseph Guthrie, Tami Guthrie, Judy Guthrie, Kelly Guthrie (Pittman), Lance Pittman, Joseph Guthrie Family Trust, Growth Opportunities, Inc., and Showcase America, Inc. of whom all but Joseph Guthrie, Kelly Guthrie (Pittman), and Lance Pitmann were dismissed on a motion to dismiss for lack of personal jurisdiction.  (Transcript 29; Pl.'s Ex. 1.) It will be referred to as the "ULC action."

2. The Complaint in the ULC action alleged that, on or about October 8, 1998, ULC loaned $500,000 to United American Company ("UAC"), a company under the operation and control of Joseph Guthrie, and received a promissory note and a security interest in the inventory at all the stores of UAC.  (Pl.'s Ex. 1 at 3.)

2

3.  According to the Complaint in the ULC action, in May 2000, ULC purchased the entire inventory of UAC.  (Pl.'s Ex. 1 at 3.)  ULC alleged that Guthrie represented that the inventory would be sold to repay the debt of UAC to ULC, but that Guthrie instead sold it for his own use.  (<u>Id.</u> at 3, 7.)

4.  The Complaint in the ULC action raised claims of contribution, indemnity, conversion, fraud, unfair and deceptive acts and practices, civil conspiracy, and racketeering against the defendants for absconding with and converting the above inventory to their own use.  (Pl. Ex. 1 at 3.)

5.  Anthony Flanagan, the lawyer who was retained to represent the Guthries and other defendants in the ULC action, failed to file a timely Answer to the Complaint in that action.  (Pl.'s Ex. 23.)  As a result, default was entered against defendants Joseph F. Guthrie, Lance Pittman, and Kelly Guthrie (Pittman).  (Pl.'s Ex. 4.)

6.  Flanagan's attempts to have the default set aside were ineffective and default judgment was entered against the defendants for $515,000 and court costs, the amount sought by the plaintiffs.  (Pl.'s Exs. 5, 6.)

7.  Flanagan told Joseph Guthrie that he would file an appeal from the default judgment.  (Pl.'s Ex. 7.)

8.  On May 28, 2004, Flanagan filed a notice of appeal on behalf of the defendants in the ULC action.  (Pl.'s Ex. 8.)

3

9.   After May 2004, however, Flanagan conducted almost no further work on the appeal and he failed to file a proposed record on appeal as required by Rule 11 of the North Carolina Rules of Appellate Procedure.  (Pl.'s Ex. 23.)

10.  On July 14, 2004, Flanagan notified Joseph Guthrie by facsimile and mail that he intended to withdraw from representing the defendants.  (Pl.'s Ex. 11.)  On July 16, 2004, Flanagan filed his Motion to Withdraw with the North Carolina court.  (Id.)

11.  Flanagan's Motion to Withdraw was granted by order of the court on August 5, 2004.  (Pl.'s Ex. 23.)

12.  After Flanagan withdrew from representation, the remaining defendants, Joseph F. Guthrie and Kelly Guthrie Pittman, retained Ellis & Winters LLP.  (Pl.'s Ex. 15.)

13.  Ellis & Winters applied for, but was unsuccessful in obtaining, an extension of time to serve the record on appeal. (Pl.'s Ex. 14.)  However, after being denied on its first petition for writ of certiorari, Ellis & Winters succeeded in having an alternative petition for writ of certiorari granted.  (Id.)

14.  On appeal, the North Carolina Court of Appeals affirmed the trial court's refusal to set aside the entry of default, but vacated the judgment and remanded the case for a hearing on damages.  (Pl.'s Ex. 18.)  The Court of Appeals found that it was an abuse of discretion for the trial court to have awarded damages

4

based solely on assertions made by the plaintiffs without any supporting evidence. (Id.)

15. On remand, the North Carolina Superior Court addressed the four remaining claims against Guthrie: contribution, conversion, fraud, and unfair and deceptive acts and practices. (Pl.'s Ex. 20.)

16. The Superior Court heard the testimony of various witnesses, but noted that a major participant, Edward Shield, did not testify and did not participate in the trial. (Pl.'s Ex. 20 at 2.)

17. Although the Superior Court made general findings of fact, it stated several times in its opinion that it was adjudicating only the issue of damages and that liability had been admitted as a matter of law by virtue of the default. (Id. at 14, 15, 17.)

18. Consistent with the Complaint, the findings of fact made by the Superior Court stated that, on May 23, 2000, ULC, pursuant to its interests under the Promissory Note and Security Agreement[,] purchased the entire inventory of UAC. (Id. at 7.) It was allegedly after this purchase that Joseph Guthrie absconded with the valuable inventory, converting the inventory to his own use or the use of Growth Opportunities, Inc., and/or Showcase America, Inc. (Id.)

5

19. On the first claim, the Superior Court determined that there was no evidence supporting a claim of contribution, and awarded no damages on that claim. (Id. at 13.)

20. The Superior Court then looked to the claim of conversion, and calculated that damages for conversion, assuming liability, were $150,000, based on testimony from Lance Pittman on the worth of inventory. (Id. at 14-15.)

21. On the fraud count, the Superior Court assessed damages of $500,000 based on findings that United Leasing lent $500,000 to UAC; that UAC defaulted on that note; and that because of misrepresentations made by Joseph Guthrie, United Leasing then did not seize inventory to which it was entitled. (Id. at 15-16.)

22. Then, the Superior Court found that the admission of the allegations of the complaint which resulted from the entry of default established a claim of fraud, which also constituted unfair and deceptive acts and practices under the statute, and mandated a trebling of damages. (Id. at 17-18.)

23. However, the Superior Court considered that the damages for conversion and fraud were overlapping, so it trebled the $500,000 fraud finding and entered total judgment against Joseph Guthrie in the amount of $1,500,000. (Id.)

24. On August 28, 2007, the Superior Court also entered judgment against Kelly Guthrie (Pittman). (Pl.'s Ex. 21.) Finding that the plaintiffs had "failed in their burden of proof to show a

[sic] specific and identifiable damages, caused solely by Kelly Guthrie," the court awarded a judgment of $25.00 in nominal damages against Kelly Guthrie. (<u>Id.</u>)

25. If Joseph and Kelly Guthrie had been afforded the opportunity to contest liability at the trial court level, they would have presented the testimony of Edward Shield as the President of ULC, and a letter dated September 19, 2001 which Shield authored.

26. In the September 2001 letter, which reflects the testimony that Shield necessarily would have given, Shield explains that, in May 2000, ULC purchased the assets of UAC and its subsidiary companies at a bankruptcy Article 9 sale. (Def.'s Ex. 3.)

27. The assets remaining after the sale were either dissipated or abandoned in lieu of payment of further storage and handling charges. (<u>Id.</u>)

28. ULC made the conscious decision that it was less expensive to abandon its property rather than attempt any further disposition. (<u>Id.</u>)

29. The remnants of the subject property were abandoned in July or August 2000. (<u>Id.</u>)

30. In connection with their appeal to the North Carolina Court of Appeals in an attempt to remedy the effect of the

malpractice, the Guthries were billed $142,068.08 by Ellis & Winters (Pl.'s Ex. 15, 16.)

31.  Of the fees and costs billed by Ellis & Winters, a total amount of $58,068.08 was paid by checks from Judy Guthrie made out directly to Ellis & Winters and noted as "Loan to Joseph Guthrie", and $15,000 was paid by wire transfer or checks from The VanHorn Trading Company with no memo notation (Pl.'s Ex. 16, 17.)  The sum of $69,000 in fees, invoiced to Joseph Guthrie, is still outstanding.  (Id.)

32.  The Guthries also claim $25,000 in fees, costs, and expenses in connection with the appeal from retaining Steven S. Biss, Esquire and $10,025.11 from retaining Nicholls & Crampton. (Pl.'s Supp. Proposed Findings of Fact and Conclusions of Law ¶ 42.) It is not clear how the Guthries arrived at those numbers.

33.  From the voided checks, it appears that, after February 1, 2005, when Mr. Biss began working on the appeal, Judy Guthrie paid to the order of Steven Biss $6,000 with a check annotated as "Legal Fees / Loan to Joseph Guthrie Trust" and $5,000 with a check annotated "Legal fees."  (Pl.'s Ex. 17.)  The VanHorn Trading Company paid $9,000 to Steven Biss with checks annotated with "legal fees" and $7,500 with checks annotated "NC Case."  (Id.)

34.  There is one check for $5,000 from May 2005 made out to Kevin Sink of Nicholls & Crampton from The VanHorn Trading Company marked as "retainer fee for Joseph Guthrie."  After that date, there

8

are invoices from Nicholls & Crampton to Joseph and Kelly Guthrie totaling $4,105.26.

## CONCLUSIONS OF LAW

A.   Virginia's choice of law rule, <u>lex loci delicti</u>, requires that North Carolina law be applied in this case.   <u>Milton v. ITT Research Inst.</u>, 138 F.3d 519, 521 (4th Cir. 1998).

B.   In North Carolina, plaintiffs must establish that attorney negligence was the proximate cause of their damages in order to prevail.   <u>Murphy v. Edwards and Warren</u>, 36 N.C. App. 653, 659-60 (1978).

C.   To demonstrate proximate cause, a plaintiff must establish that "the loss would not have occurred but for the attorney's conduct." <u>Belk v. Cheshire</u>, 159 N.C. App. 325 (N.C. App. 2003).

D.   The trial court in North Carolina was unable to identify any specific evidence supporting a claim of damages against Kelly Guthrie.   It is clear that Flanagan's negligence was the proximate cause of Kelly Guthrie's damages.

E.   Flanagan's negligence was also the proximate cause of Joseph Guthrie's damages.   The conversion and fraud claims, and hence the unfair and deceptive practices claim, were based upon the notion that Guthrie absconded with the inventory once ULC purchased

9

it from UAC in May 2000 during a bankruptcy sale.[2] The evidence that would have been offered by Edward Shield attesting to the wholesale abandonment of the purchased inventory by ULC provides a complete defense to liability on those counts. Joseph Guthrie would not have incurred the damages imposed by the Superior Court had default judgment not been entered against him, thereby foreclosing any argument on liability.

F.   The Superior Court's opinion makes clear the dispositive impact of the default judgment: conversion damages were calculated based on the value of the inventory and fraud damages were calculated based on the value of the original loan. Neither of these damage amounts can be linked to wrongdoing by Joseph Guthrie absent a mandated finding of liability pursuant to the default.

G.   The proper measure of damages in an attorney malpractice case is the difference between the plaintiff's actual pecuniary position and what it should have been had the attorney not

---

[2] The fraud count contains allegations of misrepresentations related to a 1998 loan from ULC to UAC. According to the Complaint and the Findings of Fact from the August 2007 judgment, ULC purportedly purchased the entire inventory of UAC in May 2000 in pursuit of its interests under the loan. Thus, liability on even the fraud count relies upon Guthrie unlawfully converting the inventory after ULC purchased it.

committed malpractice.  Smith v. Childs, 437 S.E.2d 500, 509 (N.C. App. 1993) (internal quotations and citations omitted).

H.   Damages can include attorneys' fees and costs expended to remedy the injury caused by the malpractice.  Gram v. Davis, 495 S.E.2d 384, 387-88 (N.C. App. 1998).

I.   Reasonableness of attorneys' fees does not factor into the damages inquiry as outlined above.  Exorbitant attorneys' fees might provide an argument for failure to mitigate damages.  See Smith v. Martin, 478 S.E.2d 228, 233-34 (N.C. App. 1996) (evaluating argument on reasonableness of mitigation efforts).  Failure to mitigate damages is a defense and, on that issue, the defendant has the burden of proof.  Childs, 437 S.E.2d at 507-08.

J.   Flanagan has not provided any evidence that the Guthries have failed to mitigate damages in any way.  The retention of additional counsel to pursue an appeal was a reasonable attempt to mitigate damages.  The unfortunate augmentation of the damages award on remand does not detract from the reasonableness of the action ex ante.

K.   Guthrie can thus recover for those attorneys' fees and costs accrued in pursuing the appeal in North Carolina.  However, Flanagan is only liable for those attorneys' fees and costs which Guthrie is obligated to pay.[3]  These include those fees paid by

---

[3] Although the Nicholls & Crampton invoices are addressed to both Joseph and Kelly Guthrie, the plaintiffs admitted at trial that the judgment for fees ought to go to Joseph

11

checks marked as "Loan to Joseph Guthrie" or "Loan to Joseph Guthrie Trust," as well as those fees that have been invoiced to him for which he is liable, but have not been paid.  These total $137,173.34: $127,068.08 to Ellis & Winters, $6,000 to Steven Biss, and $4,105.26 to Nicholls & Crampton.

L.  The judgment of the North Carolina Superior Court is in full force and effect, notwithstanding any potential stay obtained through deposit of supersedeas bond, until such judgment is reversed or modified by the appellate division.  N.C. GEN. STAT. ANN. § 1-296 (Thomson Reuters/West 2008).

M.  Consequently, the award of $1,500,000 against Joseph Guthrie is a non-speculative, concrete quantity of damages suffered by Joseph Guthrie that is calculable with reasonable certainty. See Olivetti Corp. v. Ames Bus. Sys., Inc., 356 S.E.2d 578, 586 (N.C. 1987); People's Center, Inc. v. Anderson, 233 S.E.2d 694, 696 (N.C. App. 1977).

N.  Joseph Guthrie can recover for the $1,500,000 damages award against him that was proximately caused by Flanagan's negligence.

O.  The difference between Kelly Guthrie's actual pecuniary position and what it would have been absent the negligence is $25 and she can recover that sum.

---

Guthrie alone and not to Kelly Guthrie.  (Tr. at 147.)

12

P.   Given the pendency of the appeal of the judgment of damages in the ULC case, and the uncertain disposition of that case on appeal, the Court will retain jurisdiction over this action to enter any potential offset occasioned by a favorable decision on appeal.   Further, enforcement of the judgment herein will be stayed pending resolution of the appeal pending in the North Carolina court.

It is so ORDERED.

_____/s/_____ _REP_

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: August 22, 2008

13