IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



JOSEPH F. GUTHRIE, et. al.,

    Plaintiffs,

v.                              Civil Action No. 3:07cv479

ANTHONY E. FLANAGAN,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's Motion from Relief from Judgment (Docket No. 50). For the reasons set forth below, the motion will be denied.

## BACKGROUND

On March 7, 2007, the Plaintiffs, Joseph and Kelly Guthrie (the "Guthries"), filed an action against their former attorney, Anthony Flanagan ("Flanagan"), asserting a claim for legal malpractice. Before trial, the parties stipulated that Flanagan's actions were negligent, and the parties then proceeded to a bench trial on the issues of causation and damages. At the conclusion of the trial, the Court held that Flanagan's negligence proximately caused the entry of a default judgment against the Guthries in Wake County, North Carolina Superior Court, and the Court

assessed damages in the amount of $1,637,198.34. See Memorandum Opinion, August 28, 2008 ("August 2008 Opinion") at 11-13. The salient facts for the resolution of this motion, as set forth in the August 2008 Opinion, are as follows.

Flanagan's malpractice occurred in a civil action in Wake County, North Carolina Superior Court, which was brought by United Leasing Corporation ("ULC") and Shield Family Limited Partnership ("SFLP") against Joseph Guthrie, Tami Guthrie, Judy Guthrie, Kelly Guthrie, Lance Pittman, Joseph Guthrie Family Trust, Growth Opportunities, Inc., and Showcase America, Incorporated (hereinafter "the ULC action"). Id. All of the defendants except Joseph Guthrie, Kelly Guthrie, and Lance Pitmann were dismissed on a motion to dismiss for lack of personal jurisdiction. Id. at 2. The Complaint in the ULC action raised claims of contribution, indemnity, conversion, fraud, unfair and deceptive acts and practices, civil conspiracy, and racketeering against the defendants for converting certain inventory to their personal use. Id.

Flanagan, the lawyer who was retained to represent the Guthries in the ULC action, failed to file a timely Answer to the Complaint. Id. at 3. As a result, default was entered against the Guthries. Id. Flanagan's subsequent

attempts to have the default set aside were ineffective, and default judgment was entered against the defendants for $515,000. Id.

Flanagan then told Joseph Guthrie that he would file an appeal from the default judgment. Id. On May 28, 2004, Flanagan filed a notice of appeal on behalf of the defendants in the ULC action. Id. After May 2004, however, Flanagan conducted almost no further work on the appeal, and he failed to file a proposed record on appeal as is required by the North Carolina Rules of Appellate Procedure. Id. at 4. On July 14, 2004, Flanagan notified Joseph Guthrie that he intended to withdraw from representing the Guthries. Id.

After Flanagan withdrew from the representation, the Guthries retained Ellis & Winters, LLP to appeal the decision of the Superior Court. Id. On appeal, the North Carolina Court of Appeals affirmed the trial court's refusal to set aside the entry of default, but vacated the judgment and remanded the case for a hearing on damages. Id. The Court of Appeals found that it was an abuse of discretion for the trial court to have awarded damages based solely on assertions that were made by the plaintiffs without any supporting evidence. Id. at 5.

3

On remand, the North Carolina Superior Court addressed the four remaining claims against the Guthries: contribution, conversion, fraud, and unfair and deceptive acts and practices, and the Superior Court ultimately entered judgment against Joseph Guthrie in the amount of $1,500,000. Id. at 5, 6. The Superior Court also entered judgment against Kelly Guthrie, and it awarded a judgment of $25.00 in nominal damages against her. Id. at 7. The amount of that judgment, as well as the legal fees and costs incurred in seeking to set aside judgment in the ULC action, were incorporated into the judgment entered by this Court against Flanagan on August 28, 2008. Id. at 12.

On September 22, 2008, Flanagan timely noted an appeal from this Court's judgment, but the appeal was dismissed by agreement on December 3, 2008 pursuant to Fed. R. App. P. 42(b). On September 19, 2008, three days before filing his notice of appeal, Flanagan received correspondence from ULC which enclosed a Settlement Agreement that had been executed by the Guthries, SFLP, and ULC (among others) on February 17, 2006. Def's Mot. at 2. In relevant part, the Agreement provided the following:

> *If the default judgment entered by the Wake County North Carolina General Court of Justice, Superior Court division on April 20, 2004 in favor of ULC and SFLP in connection with the North Carolina Action (including any further*

4

> orders awarding default judgment to ULC and SFLP following remand of the pending appeal) (the "North Carolina Default Judgment") *is upheld and becomes a final and unappealable judgment, Joe and Kelly agree that seventy-five percent (75%) of the proceeds (the "Malpractice Action Proceeds") awarded to Joe and Kelly (after payment of costs and reasonable attorney's fees to counsel for Joe and Kelly) by settlement, judgment or otherwise, from or as a result of the claims and causes of action asserted by Joe and Kelly asserted against Anthony E. Flanagan ("Flanagan") after Joe and Kelly's appeal of the North Carolina Default Judgment is finally resolved ("Malpractice Action") shall be paid to ULC and/or SFLP. If the North Carolina Default Judgment is not upheld, ULC and SFLP will not be entitled to any amount awarded to Joe and Kelly from or as a result of the Malpractice Action.*

Settle. Agree. at ¶ 4 (emphases added). The Settlement Agreement also provided that "the mutual releases contained in this Agreement shall not apply to and shall not constitute a release or waiver of any claim, cause of action or rights that ULC and/or SFLP may have against Joe or Kelly arising from the facts, allegations, or circumstances . . . filed in [the ULC action]." Id. at ¶ 3. The first notice that Flanagan had of this Settlement Agreement was when he received a copy of it on September 19, 2008.

After learning about the 2006 Settlement Agreement, Flanagan initiated contact with the Court, and a schedule was set for any needed discovery and briefing. Thereafter, Flanagan filed the pending motion. As framed by Flanagan,

5

the "primary issue" for the Court to decide is "whether the conduct of [the Guthries] constitutes fraud against this Court or created a circumstance where [the Guthries] had every incentive to allow the largest award possible in [the ULC action] in order to maximize the likelihood of receiving a return on the Settlement Agreement." Def's Mot. at 2, 3. The motion has been fully briefed and is now ripe for decision.

I. Motions Under Fed. R. Civ. P. 60(b)[1]

As a general matter, the district court is the proper forum in which to bring a Rule 60(b) motion for relief from that court's own judgment. Fobian v. Storage Tech. Corp., 164 F.3d 887, 889 (4th Cir. 1999). Nevertheless, it is a settled principle of law that a Rule 60(b) motion seeking relief from a final judgment of a district court is not a substitute for a timely and proper appeal. See Ackermann v. United States, 340 U.S. 193, 198 (1950).

Fundamentally, Rule 60(b) relief represents an "extraordinary" remedy. Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979). Hence, before a party is entitled to relief under any subsection of Rule 60(b), the

---

[1] Flanagan asserts that he is seeking relief under Rule 60(b), without specifying any particular subsection of the Rule. See Def's Mot. at 8. In light of his substantive arguments, however, it is evident that Flanagan is seeking relief under both Rule 60(b)(2) ("newly discovered evidence") and Rule 60(b)(3) ("fraud" or "misconduct").

party first must show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984). "After a party has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b)" to set aside the district court's order.2 Dowell v. State Farm Fire & Casualty Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993).

Flanagan has failed to demonstrate the existence of any "exceptional circumstance" that would allow him to seek relief under Rule 60(b). In this case, it is undoubtedly significant that the Settlement Agreement of which Flanagan now complains *pre-existed* the filing of the current civil action and was not confidential. Pltfs' Opp. at 3; see also Helm v. Resolution Trust Corp., 84 F.3d 874, 879 (7th Cir. 1996) ("attorney negligence is not an exceptional circumstance justifying relief"). Hence, its existence could have been discovered.

Moreover, Flanagan has proffered no reason why a discovery request broad enough to call for the production

---

2 It was appropriate to follow North Carolina law in assessing Flanagan's malpractice action because Virginia follows the doctrine of *lex loci delicti*. Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). However, with respect to any *procedural issues* in this case, such as post-trial motions filed under Rule 60(b), federal law applies. See Eniola v. Leasecomm Corp., 214 F. Supp. 2d 520, 523 (D. Md. 2002) (Erie requires that the motion be analyzed under the federal rule governing motions for relief from judgment).

7

of the Settlement Agreement was not made. Nor does Flanagan assert that the existence of the document was covered by any discovery request that he made. Nor has Flanagan proffered any circumstance which he asserts to be "exceptional." Therefore, as a threshold matter, the invocation of Rule 60(b) is inappropriate.3

**II. Fed. R. Civ. P. 60(b)(2)**

Assuming *arguendo*, however, that Flanagan has satisfied the applicable requirements under Rule 60(b), the Court could entertain his claims under any of the six subsections of the Rule. In this matter, however, only subsections (2) and (3) of Rule 60(b) are germane to Flanagan's arguments.

Rule 60(b)(2) provides that a court may grant relief from its orders on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Id. This requirement is sometimes referred to as the "justifiable ignorance" requirement. See SEC v. United States Envtl., Inc., 2004 U.S. Dist. LEXIS 20271, at *8 (S.D.N.Y. Oct. 7, 2004).

---

3 Furthermore, for the reasons set forth *infra*, it is evident that the Settlement Agreement also fails to provide a "meritorious defense" to the Guthries's malpractice claim against Flanagan. Given these conclusions, there is no need to engage in the highly discretionary inquiry respecting whether Flanagan's Motion was "timely" filed.

8

It is uncontested that Flanagan failed to conduct any pre-trial discovery in this case, and he did not petition the Court to reopen discovery on any matter once discovery was closed. See Pltfs' Opp. at 5; Def's Reply at 3. Hence, it is clear that Flanagan exercised *no diligence* in defending the malpractice claim against him. And, had Flanagan pursued his discovery rights, he may very well have discovered the Settlement Agreement before trial. Therefore, under the plain text of Rule 60(b)(2) which requires "due diligence," Flanagan is not entitled to relief. See, e.g., Sangi v Fairbanks Capital Corp., 219 Fed. Appx. 359, 360 (5th Cir. 2007) (buyers were not entitled to relief under Rule 60(b)(2) because they had failed to pursue discovery in their case); Kirby v. Ge, 210 F.R.D. 180, 190 (W.D.N.C. 2000) ("[The] affidavits Plaintiffs submitted, most of which were from individual Plaintiffs, contained information that Plaintiffs most certainly could have discovered had they exercised due diligence during the discovery period."); Travelers Cas. & Sur. Co. v Crow & Sutton Assocs., 228 F.R.D. 125, 130 (N.D.N.Y. 2005) (Insureds were not entitled to relief on the basis of newly discovered evidence because they failed to enforce their rights to obtain the documents through available discovery enforcement mechanisms).

**III. Fed. R. Civ. P. 60(b)(3)**

Rule 60(b)(3) affords relief from a final judgment or order based on "fraud . . . misrepresentation, or other misconduct of an adverse party." Id. In the Fourth Circuit, to prevail on a Rule 60(b)(3) motion: (1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the proved misconduct must have prevented the moving party from fully presenting its case. Schultz v. Butcher, 24 F.3d 626, 630 (4th Cir. 1994). Consequently, "Rule 60(b)(3) focuses not on erroneous judgments as such, but on judgments which were unfairly procured." Id. at 631.

Flanagan's motion appears to posit two discrete theories of relief under Rule 60(b)(3): fraud on the court and the misconduct of an adverse party. Def's Mot. at 8. However, from the unambiguous terms of the Settlement Agreement, it is clear that Flanagan has failed to establish his entitlement to relief under either of these two theories.

**A. Fraud On The Court**

Flanagan contends that the Guthries's "actions prosecuting their claims misled this Court in believing [that the Guthries] were damaged by [the ULC action] when

10

in fact they shared *a profit motive* during that trial and during the trial before this Court." Id. (emphasis added). Hence, Flanagan appears to be alleging that the Guthries perpetrated a fraud on this Court.

"When alleging a claim of fraud on the court, the plaintiff must show by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the finality of the judgment." Weese v. Schukman, 98 F.3d 542, 552 (10th Cir. 1996). Fraud upon the court is "typically confined *to the most egregious cases*, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged." Rainwater v. Mallas, 1994 U.S. App. LEXIS 37124, at *7 (4th Cir. Dec. 23, 1994) (emphasis added).

Flanagan has not alleged that the Guthries engaged in this type of egregious conduct. Therefore, he has no basis for relief pursuant to this particular specie of "fraud" under Rule 60(b)(3). See id.

### B. The Misconduct Of An Adverse Party

Flanagan also claims that "[i]n the case at bar, the [Guthries's] *extrinsic fraud* is actionable under Rule 60(b) because it prevented the Court from determining the true

11

merits" of the malpractice case. Def's Mot. at 8 (emphasis added). Thus, Flanagan claims that the alleged misconduct of the Guthries requires relief under Rule 60(b)(3).[4]

However, Flanagan's requested relief under Rule 60(b)(3) cannot be granted. Fundamentally, the challenged Settlement Agreement does not afford Flanagan any "meritorious defense" to the judgment entered against him by this Court, nor does it demonstrate any "misconduct" on behalf of the Guthries. This legal conclusion is justified for a number of reasons. First, the Settlement Agreement *clearly and unambiguously* excludes the ULC action from the terms of the settlement between the parties. See Settle. Agree. at ¶ 4 ("the mutual releases contained in this Agreement shall not apply to and shall not constitute a release or waiver of any claim . . . filed in [the ULC action]"). Nowhere in his motion does Flanagan mention this key fact.

Second, in substantive terms, the Settlement Agreement has no bearing on the proper outcome of the August 2008 malpractice action. The terms of the Settlement Agreement do nothing to alter the amount of damages suffered by the Guthries as a result of Flanagan's malpractice. Flanagan's

---

[4] As a matter of law, North Carolina law clearly permits the contingent assignment of settlement proceeds such as the assignment detailed in the challenged Settlement Agreement. See Alaimo Family Chiropractic v. Allstate Ins. Co., 155 N.C. App. 194, 199 (2002).

12

argument evinces a fundamental misunderstanding about what the Settlement Agreement accomplished. The Agreement, which was executed between the Guthries, SFLP, and ULC (among others), agreed to resolve certain outstanding lawsuits among the parties. Id. at ¶ 2, 3. As noted above, however, the Settlement Agreement explicitly excluded the ULC action from its reach. Id. at 3. Accordingly, the Settlement Agreement simply did not affect the incentives of the Guthries with respect to either the appeal of the ULC action or the prosecution of the malpractice action.

Third, the gravamen of Flanagan's argument appears to be that the Guthries would have no incentive to "truly contest the damages award in [the ULC action], as they would benefit from such an award" in the malpractice action. Def's Mot. at 5. In making this point, Flanagan notes that, through the terms of the Settlement Agreement, the Guthries would only have to assign 75% of the damages from their successful malpractice action against Flanagan to ULC and SFLP. Id.

Again, however, Flanagan's confusion is evident. Predominately, Flanagan fails to appreciate the fact that the Settlement Agreement resolved claims that were *wholly unrelated* to either the ULC action or the malpractice claim

against him. Specifically, the assignment of proceeds from the malpractice action required the Guthries to pay money that would *have otherwise been used* to offset the significant default judgment against them in order to settle a number of other pending claims. Therefore, even though the Guthries had to assign only 75% of the proceeds from their successful malpractice claim, the Agreement did ultimately result in a significant net loss to the Guthries.

Finally, Flanagan's "perverse incentive" argument is belied by the uncontested course of conduct of the Guthries after the Agreement was executed. Significantly, the Settlement Agreement provided for a partial assignment of proceeds *only in the event* that the North Carolina default judgment was upheld. See Settle. Agree. at ¶ 4. Conversely, the Agreement provided for no assignment of proceeds in the event that the default judgment was successfully vacated by the Guthries. Id. Logically then, the terms of the Settlement Agreement provided the Guthries with a strong incentive to contest the default judgment.

Indeed, through the filing of multiple appeals, incurring substantial attorney's fees and costs, and enduring multiple days of trial, the Guthries demonstrated their sincere desire to vacate the default judgment.

14

Moreover, if the Guthries had been successful on appeal, they still could have recovered against Flanagan for legal malpractice, but their damages would have been *limited* to the attorney's fees incurred in remedying his negligence. See Smith v. Childs, 437 S.E.2d 500, 509 (N.C. App. 1993). Nevertheless, that is precisely the result that the Guthries pursued. These costly and persistent efforts to overturn the default judgment directly refute Flanagan's contention that the Agreement provided the Guthries with an incentive to become apathetic about the ULC action in order to somehow "profit" from the malpractice action.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Relief from Judgment (Docket No. 50) is denied.

It is so ORDERED.

                              /s/           REP
                        Robert E. Payne
                        Senior United States District Judge

Richmond, Virginia
Date: May 20, 2009